# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-23203-BLOOM/TORRES

YEVGENYA AKSYONOV,

      Plaintiff,

v.

MARTIN O'MALLEY, Acting Commissioner
of the Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

This cause comes before the court on cross-motions for summary judgment filed by Plaintiff, Yevgenya Aksyonov ("Plaintiff" or "Ms. Aksyonov") [D.E. 13] and Defendant, Martin O'Malley, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") [D.E. 14] on whether the Administrative Law Judge ("ALJ") properly weighed the evidence in reaching her unfavorable decision. Under the limited standard of review governing this case, the Court finds that the motions are ripe for disposition and that substantial evidence supports the ALJ's determination. For the reasons stated below, Plaintiff's motion for summary judgment [D.E. 13] should be **DENIED**, Defendant's motion for summary judgment [D.E. 14] should be **GRANTED**, and the decision of the ALJ should be **AFFIRMED**.[1]

---

[1] On November 30, 2023, the Honorable Beth Bloom referred these motions to the Undersigned Magistrate Judge for a Report and Recommendation. [D.E. 10].

1

## *I.     BACKGROUND*

On July 2, 2020, Plaintiff filed a disability application relating to complaints of: diabetes mellitus type II, peripheral neuropathy, obesity, cervical spondylosis, and lumbar radiculopathy—which the ALJ deemed severe—and bilateral carpal tunnel syndrome, osteoarthritis, polycystic ovarian syndrome, generalized anxiety disorder, and major depressive disorder—which the ALJ deemed non-severe. The ALJ concluded that Plaintiff's residual functional capacity ("RFC") was such that Plaintiff could perform her past relevant work as an audit clerk. Thus, the ALJ's decision was unfavorable to Plaintiff.

Subsequently, Plaintiff petitioned to the Appeals Council but was denied review on July 27, 2023. This pending action followed, in which Plaintiff asserts that numerous errors plague the ALJ's unfavorable decision. Namely, Plaintiff argues that (1) the ALJ failed to properly assess the medical opinion evidence; (2) the ALJ's RFC finding was not supported by substantial evidence; and (3) the ALJ failed to properly consider Plaintiff's subjective account of her symptoms and limitations.

Defendant, meanwhile, argues that, on each score, the ALJ's analysis followed the proper legal frameworks and that her opinion was supported by substantial evidence.

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case). Instead, so long as an ALJ's findings are supported by substantial evidence, a court must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). A court also reviews an ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.

1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). We cannot "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [ALJ]." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001)). Instead, while "scrutiniz[ing] the record as a whole," we must determine if the ALJ's findings were reasonable, *Bloodsworth*, 703 F.2d at 1239, and if the proper legal standards were applied, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.   *APPLICABLE LAW AND LEGAL PRINCIPLES*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing evidence that proves he or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both

4

a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)).

An ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. *See* 20 C.F.R. § 404.1520(b). In the second step, an ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If an ALJ does not make such a finding, then the inquiry ends. *See id.* at § 404.1520(c). At step three, an ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work."). If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work. If the claimant cannot perform past relevant work, then a prima facie case of disability is established. An ALJ assesses a claimant's RFC prior to this stage, based on the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See id.* at

§ 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, an ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express the claimant's RFC in terms of the exertional levels of work (i.e., sedentary, light, medium, heavy, and very heavy).

This leads to step five—the final inquiry—where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform based on the claimant's RFC, work experience, education, and age. *See id*. at § 404.1520(e)-(f).

### IV.   *ANALYSIS*

We will address in turn Plaintiff's three major arguments: (1) that the ALJ erred in evaluating the medical opinion evidence; (2) that the ALJ erred in determining Plaintiff's RFC; and (3) that the ALJ improperly analyzed and/or neglected to consider Plaintiff's subjective account of her alleged disabilities.

### A. *Opinion Evidence*

Plaintiff asserts that the ALJ did not adequately assess the opinion of Susan Lurie, M.D. ("Dr. Lurie") before deeming it unpersuasive. Additionally, Plaintiff argues that the ALJ did not provide proper analysis to support her finding that the state agency reviews completed by Jeffrey Prickett, Psy. D ("Dr. Prickett"), and Bevlon Sagon, Ph. D ("Dr. Sagon"), were persuasive.

We will address the ALJ's analysis regarding Dr. Lurie's opinion before analyzing same for the state agency reviews.

### 1. *Dr. Lurie's Opinion*

Plaintiff argues that, in finding Dr. Lurie's opinion unpersuasive, the ALJ relied on apparent inconsistencies within Dr. Lurie's opinion, but did so in error. For example, while the ALJ characterizes Dr. Lurie's notes as describing Plaintiff's depression and anxiety as "mild" yet also "severe," Plaintiff argues this is not an inconsistency but rather an effort to explain that Plaintiff's conditions have worsened over time. Additionally, while Dr. Lurie notes that Plaintiff's conditions have gotten "better," Plaintiff argues that the ALJ improperly amplified that note to mean that Plaintiff's condition has become mild or dissipated. Further, Plaintiff argues that the ALJ's apparent misgivings about Dr. Lurie's lack of specialization should not have been relevant to the analysis.

In response, Defendant argues that the ALJ "cited a litany of evidence" to undermine the persuasiveness of Dr. Lurie's opinion. [D.E. 14 at 6]. For example, Defendant points out that Dr. Lurie characterized Plaintiff as having the most severe

range of limitations despite having no specialty in mental health. Additionally, Defendant points out that Dr. Lurie's mental assessment of Plaintiff included a demonstration of normal memory and full orientation, which were corroborated by Plaintiff's neurologist, Dr. Gedblum.

We find that the ALJ properly engaged with Dr. Lurie's opinion before finding it to be unpersuasive. In her analysis, the ALJ noted that Dr. Lurie's opinion stated that Plaintiff's depression and anxiety were "mild" until late 2021. But then, Plaintiff began taking the maximum dose of Sertaline, which, as Dr. Lurie noted, helped improve Plaintiff's impairments. Indeed, even though at that time Dr. Lurie recommended Plaintiff see a psychologist and psychiatrist and noted that Plaintiff was seeing a psychologist weekly, Plaintiff denied at the disability hearing that she ever saw a psychologist, let alone weekly (nor were any treatment notes presented).

Further, the ALJ juxtaposed Dr. Lurie's analysis with that of neurologist Dr. Jonathan Cross, who noted that Plaintiff had been taking sertraline for quite some time and it "ha[d] been effective." [D.E. 8 at 18–19]. Further, the ALJ relied on Dr. Cross's findings that Plaintiff's mental status examinations were "overwhelmingly normal." [*Id.*]. The ALJ paired this evidence with the agency reviews' conclusions that Plaintiff's mental impairments were not severe.

Moreover, the ALJ supplemented this finding with the analysis of the four broad functional areas (i.e., Plaintiff's "paragraph B" criteria). In doing so, the ALJ highlighted evidence that supported Plaintiff having normal comprehension, normal attention span and concentration, and a normal ability to adapt and manage herself.

8

This furthered the ALJ's conclusion that Plaintiff's mental limitations ranged from non-existent to mild.

Thus, we find that despite Plaintiff's objections, the ALJ properly considered Dr. Lurie's opinion, and substantial evidence supported the ALJ's finding that Dr. Lurie's opinion was unpersuasive. Where the ALJ reasonably weighs a medical opinion against the other evidence of record and draws a reasonable conclusion that the opinion is not persuasive, it is not proper for this Court to re-weigh the evidence or substitute its judgment for that of the ALJ. *See Bloodsworth*, 703 F.2d at 1239 (noting that we must "scrutinize the record as a whole" and "[e]ven if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence"); *Bardge v. Berryhill*, 746 F. App'x 907, 909 (11th Cir. 2018) (holding that ALJ did not err in finding the opinions of the plaintiff's treating physician to be unpersuasive where the ALJ "relied most heavily on the doctors' opinions which best aligned with the significant evidence in the record"); *Rodriguez v. Comm'r of Soc. Sec.*, No. 6:20-CV-1674-MRM, 2022 WL 807443, at *7 (M.D. Fla. Mar. 17, 2022) (finding no error in the ALJ's persuasiveness determination where the ALJ relied on "the medical record[s] documenting largely normal and stable physical functioning," "effective treatment," and evidence that the physician's findings were inconsistent with the plaintiff's daily activities); *Michael A. v. Comm'r, Soc. Sec. Admin.*, No. 1:20-CV-1184-MLB-CCB, 2021 WL 4234964, at *8 (N.D. Ga. July 30, 2021), *report and recommendation adopted sub nom.*, 2021 WL 3732853 (N.D. Ga. Aug. 24, 2021) ("The ALJ considered Ms. Stevens's opinion in

9

detail, expressly afforded weight to those opinions, and explained why she gave them the weight that she did—essentially, that there were numerous findings in the treatment notes inconsistent with both the extreme limitations Stevens suggested and her ultimate opinion that Plaintiff could not work. Nothing more was required.").

### 2. *The State Agency Reviews*

Plaintiff next asserts that in finding the state agency reviews to be persuasive, the ALJ offered "no rationale in support thereof," and therefore "the ALJ's finding is nothing more than an impermissible conclusory statement." [D.E. 13 at 8]. Further, Plaintiff argues that, while the ALJ stated that the opinions are "consistent" with presented medical records, the ALJ did not explain that apparent consistency. Additionally, Plaintiff argues that the ALJ neglected to engage in a "supportability" analysis because she merely summarized the state agency's opinions.

Defendant, conversely, argues that, when assessing the state agency's opinion, the ALJ considered numerous mental status examinations and other evidence. Thus, Defendant argues, the ALJ adequately considered both the supportability and consistency of the state agency reviews by considering them against the record as a whole.

As an initial matter, we agree with Plaintiff that the ALJ's analysis of the state agency reviews was indeed conclusory. In step 3 of the decision, after explaining much of the medical evidence and other medical opinions, the ALJ deemed that "[t]he opinions of the DDS psychological advisors are persuasive, as they are consistent with records of Drs. Lurie and Cross." [D.E. 8 at 19]. No other explanation followed. Thus,

10

Plaintiff is correct that the ALJ made no meaningful effort to explain how the agency reviews were consistent with the medical evidence of record and/or what evidence supported the persuasiveness of those reviews. *See Pierson v. Comm'r of Soc. Sec.*, 2020 WL 1957597, at *6 (M.D. Fla. Apr. 8, 2020), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020) (reversing and remanding the decision by the ALJ in part because the ALJ articulated only a few declaratory sentences as to why a medical opinion only received little weight).

But here, that error was harmless because substantial evidence in the record still existed to support the ALJ's unfavorable decision. Indeed, as explained in our review of the ALJ's analysis of Dr. Lurie's opinion, a litany of evidence—or at least, substantial evidence—supported the ALJ's conclusion that Plaintiff's mental impairments were non-severe. This included: evidence that Plaintiff had been successfully taking treatment; evidence that Plaintiff's condition was improving with treatment; evidence that Plaintiff did not see a psychologist or psychiatrist despite her physician's ostensible suggestion; a neurologist's (Dr. Cross) opinion that Plaintiff's treatment was effective; Plaintiff's mental status examinations which featured "overwhelmingly normal" results; and the analysis of Plaintiff's four broad functional areas which supported a finding of non-severe impairment.

So, even excluding the state agency reviews that were hardly mentioned in the analysis, substantial evidence supported the ALJ's determination that Plaintiff's mental impairments ranged from nonexistent to minor. Accordingly, even if the ALJ adequately explained why she found the state agency reviews to be persuasive

11

(which, to be clear, the ALJ should have done under the regulations), that analysis would have merely been cumulative to the substantial evidence already presented. A proper analysis would have thus done nothing to sway the ALJ's unfavorable decision, but rather would have provided it with even more support.

Therefore, any error committed by the ALJ on this score was harmless because it would not have "contradict[ed] the ALJ's ultimate findings." *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)) ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."); *see also East v. Barnhart*, 197 F. App'x 899, 901 (11th Cir. 2006) ("East also argues that the ALJ erred in failing to consider the consulting psychologist's report by Dr. Priscilla Wilson. Ph.D. However, any error in failing to address this report explicitly in the ALJ's determination was harmless given that Dr. Wilson's observations in the report were consistent with the ALJ's determination."); *Jackson v. Saul*, No. 8:19-CV-2780-T-TGW, 2020 WL 6867408, at *2 (M.D. Fla. Nov. 20, 2020) ("The plaintiff contends that the law judge erred because he failed to consider the opinions of two examining sources, Dr. Lynn Gulick and John Kivler, However … neither Dr. Gulick nor Kivler 'found that Plaintiff had greater work restrictions than the ALJ's decision suggests'. Consequently, the law judge's error was harmless."); *Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) (noting that "[i]f the ALJ commits an error that does not affect the outcome, it's harmless and doesn't require reversal or

remand" and concluding that an error by the ALJ to fail to consider a piece of evidence in discounting a medical opinion was harmless, because the ALJ relied on "other reasons—all supported by substantial evidence—for discounting" that medical opinion); *Wray v. Kijakazi*, No. 1:20CV156-AW-HTC, 2021 WL 7967592, at *7 (N.D. Fla. Dec. 3, 2021), *report and recommendation adopted*, 2022 WL 1028932 (N.D. Fla. Apr. 6, 2022) ("Moreover, the 2018 DBQ supported rather than contradicted the ALJ's determination, furthering making any error by the ALJ harmless.").

### B. *RFC Analysis*

Plaintiff further argues that the ALJ erred when she did not include Plaintiff's non-severe mental impairments in the RFC analysis. Defendant, meanwhile, argues that no error was committed because the ALJ was not required to incorporate "mild" limitations into the RFC.

We agree with Defendant. The ALJ's step 2 analysis indicated that Plaintiff's mental limitations ranged from "no limitation" to "mild limitation." This conclusion is legally significant. In *Garcia v. Comm'r, Soc. Sec. Admin.*, the Eleventh Circuit made clear that after the ALJ meaningfully and sufficiently determined that the plaintiff's mental limitations were no "more than a minimal limitation in the claimant's ability to do basic work activities," the ALJ "was not required to continue his assessment of Garcia's mental impairments after that point." No. 23-11184, 2023 WL 7404856, at *5 (11th Cir. Nov. 9, 2023). The court thus found that "the ALJ was not required to incorporate Garcia's mental impairments that he determined at step two in the rest of his RFC assessment because he found any impairments to be only

13

mild, not moderate." *Id.*; *see also Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 980 (11th Cir. 2016) (ALJ did not err in his decision to omit claimant's depression from the RFC assessment where it caused no more than mild limitations).

Further, district courts in this Circuit, including this District, have followed suit. *See Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482-MRM, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) (noting that "the persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations while completing a PRTF"); *Medwit v. Comm'r of Soc. Sec.*, No. 2:20-cv-143-JLB-NPM, 2021 WL 1341390, at *5 (M.D. Fla. Feb. 22, 2021) ("Since the ALJ only assessed 'mild' limitations in the four areas of mental functioning, the ALJ did not err by not providing a mental RFC."); *Eutsay v. Kijakazi*, No. 21-21164-CV, 2022 WL 1609088, at *9 (S.D. Fla. May 4, 2022*), report and recommendation adopted sub nom.*, 2022 WL 1605318 (S.D. Fla. May 20, 2022) ("Based on his analysis of these four broad functional areas, ALJ Burock determined at steps 2 and 3 of the sequential evaluation process that Claimant's medically determinable mental impairments did not limit Claimant's ability to perform basic work activities, thus, her mental impairments were non-severe. Thus, ALJ Burock was not obligated to include mental limitations in his RFC finding of Claimant."); *Bryant v. Comm'r of Soc. Sec.*, No. 2:20-cv-294-JLB-NPM, 2021 WL 4067464, at *11 (M.D. Fla. July 29, 2021) ("[T]he ALJ found mild limitations in all four functional areas[, but] did not err in failing to include [functional] limitations in the RFC related to [the plaintiff's] depression, anxiety, bipolar disorder, or insomnia.").

Thus, to the extent that the ALJ failed to explicitly incorporate Plaintiff's mild mental limitations into the RFC portion of the analysis, we cannot say the ALJ committed reversible error.

### C. *Plaintiff's Subjective Allegations*

Lastly, Plaintiff argues that the ALJ failed to adequately consider Plaintiff's subjective allegations of pain. Essentially, relying on her own complaints, Plaintiff disagrees with the ALJ's conclusion that Plaintiff's self-reported disabilities were "not entirely consistent with the medical evidence and other evidence in the record." [D.E. 13 at 17].

We find that the ALJ committed no error on this score. To reiterate, the ALJ considered the whole of the record, including hearing testimony, the reports of numerous medical professionals, Plaintiff's representations, and other presented evidence. In considering each of those categories of evidence, the ALJ made a finding—again, supported by substantial evidence—that Plaintiff's subjective complaints of disability did not entitle her to relief when weighed against the other evidence in the record.

Thus, the ALJ did not commit error when she was left unconvinced by Plaintiff's subjective complaints, as the ALJ relied on sufficient evidence in reaching her unfavorable decision contrary to Plaintiff's complaints. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) ("In sum, the ALJ considered Dyer's activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that Dyer's subjective complaints were inconsistent with

15

his testimony and the medical record. The ALJ thus adequately explained his reasons and it was reversible error for the district court to hold otherwise."); *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("In short, we find that the ALJ made a reasonable decision to reject Wilson's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so.").

## V.  *CONCLUSION*

For the reasons set forth above, we recommend that Plaintiff's motion [D.E. 13] be **DENIED**, Defendant's motion [D.E. 14] be **GRANTED**, and the decision of the ALJ be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE and SUBMITTED** in Chambers in Miami, Florida, this 7th day of August, 2024.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge